to maintain quiet in the courtroom. Thank you. Take your time whenever you're ready, counsel. May it please the court. My name is Kristen Price and I'm representing the plaintiff appellant and I'd like to reserve two minutes for rebuttal if I may. This appeal is about whether a sex trafficking victim has sufficiently alleged at the motion to dismiss stage that her injuries from being sex trafficked by legal brothels are fairly traceable to the counties that authorized, oversaw, protected, and profited from those brothels. The court below held that none of the public actors in this case can be held to account, not even the one who runs his own brothel and made two errors in reaching this conclusion. It applied the wrong standard for traceability and it rewrote, ignored, and minimized plaintiff's facts. First of all, as to the standard for traceability, Jane Doe's injuries are not in question and can be redressed by damages against the counties, so it's just causation that's at issue on appeal. Under Lujan, a plaintiff must generally show her injury is fairly traceable to the defendant's conduct and not the result of independent action of the independent action of some third party, not before the court. The independent third party rule was at the heart of the district court's analysis, but the legal brothels that sex trafficked Jane Doe aren't independent third parties. They're co-defendants who are before the court. The plaintiffs sued the brothels that sex trafficked her along with the counties. Ms. Price, for purposes of standing, does it matter whether the third parties happen to be sued in the case versus not? I mean, I take the third party analysis to be you're trying to reach a government defendant and there's an intermediary a third party. Why does it matter if the third party happens to be sued in the same lawsuit versus not for purposes of tracing causation for standing purposes? For the purposes of traceability, the issue is how attenuated, of course, the injury is from the and so the third party. I mean, I take your point. These third parties happen to also be defendants in this suit and we're going to hear arguments about them in the next case, but does it matter whether it's a third? Yeah, I mean, you know, does it make a difference? You were making a point you've made in the briefing that they're not really third parties because they're parties to this case. But should that matter for standing analysis? Yes, because the it should matter because you don't have to speculate about the actions of parties because they can be asked directly. They're not outside the case. And the way that the rule has been articulated by the Supreme Court and by all the other federal circuits, including this one, has emphasized the not before the court part of that. I have trouble understanding that argument. Somebody who is a non-party can be subject to discovery. If for some reason they're not subject to discovery, there can be a motion to dismiss because they're possibly a necessary party or a party that should be there. So I have trouble understanding, similar to Judge Sanchez's question, why it would make any difference to our analysis, whether somebody is named in a complaint, whether they appeared, whether there was a default judgment against them, whether they're not subject to service. I have a lot of trouble seeing how their presence in the case could affect the standing analysis. It is what the precedent has stated, but it's not necessary to reach that issue or agree that it does make a difference because the Supreme Court and FDA alliance versus FDA versus Alliance for Hippocratic Medicine said essentially that it's a predictability analysis where a plaintiff is alleging that the government regulation of a third party or failure to regulate a third party is at issue. The plaintiff just has to show a predictable chain of events leading from the government action to the injury. Let me give you a hypothetical. Let's assume counterfactually that the United States didn't have sovereign immunity. Let's put that aside. So you're familiar obviously with the Mann Act. So let's say the United States decided that because of resource issues, it wasn't going to enforce the Mann Act. So in a case like that, if the United States made a decision, you know, we have limited resources, we're not going to enforce the Mann Act, and that you could show that the United States' decision not to enforce the Mann Act significantly increased sex trafficking and harmed, for example, your client, that you could sue the United States and that there would be standing because their decision not to enforce a particular statute had traceable harm even though the actual sex traffickers were others. I think, Your Honor, in that scenario, it would be harder to show standing, although an argument could be made that because of the Mann Act's juxtaposition with the 13th Amendment, the right to be free from slavery is a fundamental constitutional right, and the way the amendment is worded, it's just a categorical abolition. So I think there could be an argument that that, especially if it was a publicized decision, to just say, we don't have the resources to deal with this hands-off, sex traffickers run amok, you're not going to be held accountable under this law. I think there's an argument there that that could violate the 13th Amendment, but that's not this situation, because the counties did more than just having a hands-off, we're not going to investigate or prosecute for this, because they authorized the brothels in the first place, they issued licenses, they wrote, they enacted one-sided regulations that didn't protect the people who were in the brothels, they profited from the brothels, and then of course in the case of Story County, Lance Gilman was himself a brothel owner whose brothel directly trafficked the plaintiff in this case. Let's talk about that. So I was trying to pinpoint what county actions you were relying on for the traceability analysis. So you've mentioned that there's a regulation to require, you know, the workers to, the one-sided regulation I think is your reference to being required to take an STI test, is that correct? Yes, your honor, that's one of them. So what else, I'm trying to understand what you conceive of the county's actions where it's fairly predictable that that would result in sex trafficking. I think, you know, workers also have to obtain a license or a certification of some So what are the things that the county is doing that makes it predictable that it would result in sex trafficking? Your honor, in terms of the county's own actions, so if I could say one other thing about the regulation requiring the license, it's not just that prostitution, you have to have a license for it, but the license has to be for a particular brothel, you have to be under the control of that brothel to get the license, and then you can only have a license for one brothel at a time. So if you want to switch, you have to go through the whole application process again, pay the fees, get tested again, and so it's essentially saying you have to be under the control of a brothel in order to do this, which is already by itself setting people up. Well, I mean, it's saying you have to be an employee of a certain brothel. Whether there's control, I guess, would amount to factual distinctions about particular brothels, but what is it about the regulation itself, though, that puts people under the control of a brothel? The brothel itself is, as we've alleged in the complaint, they all have the same coercive practices, including requiring the women to pay 50% off the top and live on site, they lock them inside, they can't leave, they're very coercive conditions, and that's the plaintiff alleges, and I think because we get reasonable inferences at this stage in the case, that these things together help to create a coercive environment, and there are a few other things, like in Elko, if the person, if a prostitute person fails, tests positive for any contagious disease, they can be, they have to be detained at the brothel by operation of law until the State Board of Health contacts them, and if they leave the brothel for more than 24 hours, they have to be subjected to testing again, and the testing we've alleged is not neutral, we did give some, the plaintiff did give some historical context on how STI testing, forceful STI testing, has a long history of being quite abusive and coercive, and then beyond the regulations themselves, the plaintiff also alleged some facts that suggest official corruption and collusion, specifically one of the brothel owners shot off his gun in the brothel, nearly shot a woman in the foot, and the county's response was just to tell him not to do it again, he bragged in the brothel about how he paid Elko officials under the table to protect his brothel, Liam Skillman would also- I mean, it seems to me that your main argument, tell me, correct me if I'm wrong, is that sex trafficking is occurring at these brothels, and the counties are not doing enough to enforce the laws to protect the workers, it's, it is, it's almost a flavor of what Judge Bennett said with the Mann Act, a flavor of you're not enforcing your laws, and I'm just not sure at this point that that's enough to establish traceability, the absence of law enforcement activity as being fairly predictive of sex trafficking occurring. Am I characterizing your arguments correctly or no? No, not exactly, Your Honor, because while the failure to investigate or intervene is an important part of the allegations against the counties, it's also the fact that they have these one-sided regulations to start with, the fact that they're allowing this at all despite what we allege in the complaint about the massive correlation between sex trafficking and legalized prostitution, we gave that as context in, in the complaint, and the court below said that it was just distracting and didn't take it as true or considerate, and then we also allege that the counties profited, and there's an affirmative duty under the Trafficking Victims Protection Act not to profit from sex trafficking, so those, it's the collusion. And how do you allege the county's profit? Through the brothel and prostitution licensing fees and through tax revenues, Your Honor. Backing, oh, I'm sorry. No, no, please go ahead. Backing up to Judge Bennett's question about the, with his Mann Act hypothetical, I understood you to say that you think there would be standing in that circumstance, failure to, to prosecute or enforce the Mann Act because of the 13th Amendment, and could you say more about that? Is there something special about the 13th Amendment that would convey standing, or are you saying that a constitutional right necessarily conveys standing? And play that out, please, a little bit, and what's authority for that? Yes, Your Honor. So I believe the case is Jones v. Mayer, which was a case, a 13th Amendment case that talked about how the 13th Amendment is self-executing by its own, by its own effect. It immediately abolished slavery wherever it might be found, and it's a little bit different from other rights in the Constitution that forbid the government from doing something, and so there's a line of case law that talks about that aspect of the 13th Amendment, and so this is getting a little bit, I think, into the merits somewhat because we do have a 13th Amendment claim in this case against the counties, but it is an argument. Judge, just a quick aside, did the judge dismiss, though, the 13th Amendment claim? The judge, the judge did not reach the 13th Amendment claims as to the counties. It dismissed them as to the brothels. So the 13th Amendment is different because the right to be free from slavery is a fundamental right, and just practically speaking, slavery was primarily a private enterprise when it was legal in this country, and when it was abolished, if the government had had the option to just sort of ignore it, then the 13th Amendment would have been a dead letter, and so I realize that's a little bit more into the merits, but the plaintiffs are arguing the 13th Amendment makes a difference here. But counsel, I know that our decision in the Williams case from 2024 is an unpublished, non-precedential decision. That being said, is there anything that distinguishes this case from the allegations that were made in the Williams case before Judge Thomas, Judge Bress, and Judge Ezra? Yes, Your Honor. There are two primary distinctions. In this case, the plaintiff was not trafficked by any illegal third-party traffickers who were separate from the case or whose actions also contributed to the harm. She was only trafficked directly by the brothel, so there are no third-party traffickers, which was an issue for the Williams court. And the second distinction is that Lance Gilman was both a county official and a brothel owner while he was trafficking the plaintiff, and so the chain of causation with him is, of course, very short. Do you want to reserve some time? Yes, if I may. We've taken up a lot of your time with questions. We'll give you two minutes for rebuttal. Thank you very much. May it please the court, good morning. I'm Brent Ryman on behalf of the County Defendant Appellees, and it's my pleasure to appear in this beautiful facility before the panel this morning. This is a case that's been brought two times before, and as Judge Sanchez noted, it was recently dismissed in the Williams case. This case has changed a little bit since Judge Dew issued her order, and it's because of several decisions that appellant has made on appeal, both in this appeal and in the second portion of the case that you'll hear on appeal after this. And the way it's changed, I think, is important to note before the panel gets into questions, because appellant has dismissed or chosen, apparently, not to appeal either her claims against the state of Nevada or her claims for prospective relief. So changing the statutes is off the board. With that in mind, and we didn't have confirmation of that until I believe page 19 of the reply briefing, I believe that the political question doctrine arguments are also off the table at this time. And so I think what I need to do is talk to this panel about attenuation and traceability, although redressability may also be a concern in my mind, especially with the idea that there's none of this third party standing out there, and there are no more opportunities in this case to change the law and theoretically redress those issues of third party standing. Judge Dew in this case issued a nice order, and we feel it should be upheld. And in doing so, she was able to parse out the fact as to one of the panel's questions earlier that I heard as to whether third party actions can defeat standing, whether those third parties are actually named in the case or whether they're just out there lurking in the background somewhere. And here, plaintiff is represented by attorneys who have represented plaintiffs in the other two cases and hoping that third time will be a charm. They included the third party actors in this case with the apparent intent to say that because they're here, their actions can't defeat standing as against the governmental entities, in this case, Elko, Story, and Nye Counties. But the actions, I think it's important to note, are not entirely predictable when the actions of parties go completely against the law. When those actions are not in compliance with the law or the regulatory scheme that's being challenged, and those third parties completely violate the law 180 degrees, acting criminally, then it's not traceable, it's not entirely predictable, and I think that's sufficient to defeat traceability. Mr. Remien, what's your best case for that? So an entity, and if the entity goes and violates the law, that can never be traced back to any of the government's actions. I wouldn't say never, Your Honor. I'd say it's not entirely predictable that that set of circumstances. But could it be predictable? I was hearing you to say that once someone violates a law, goes against what the law requires, you cannot trace it back to a government entity. But you're not going so far. I'm not saying never, Your Honor. I'm saying in this case, what they're doing should not be able to be traced back to the counties. I don't know that I would say it's never entirely predictable. But in this case, I think it's too much of a stretch, and that's been determined in two cases before this one, and upheld by the Ninth Circuit in each of them. It's too much of a stretch. There's too much attenuation there between the ecosystem argument. I guess one of the differences potentially that I saw from Williams was that if there were other third parties that were not being regulated by the county, that is an additional point of attenuation. Whereas here, the county defendants are just, you know, they're being directly regulated by the counties themselves. Would you agree that that's a little bit of a difference from Williams? I see the point you're making, Your Honor. And in the Williams case, the plaintiffs in that case, there were multiple plaintiffs in that case. One was a Jane Doe as well. I think two were Jane Doe's in that case. And they sued not only brothels in the counties, but they also sued, they had suits against counties, including Clark County, that do not allow legal prostitution and were simply regulating strip clubs and these kinds of other businesses. So there was a lot there. But the point that you're making is that here, the regulations are against or are pertaining to the brothels and therefore somehow flow to the plaintiff here. But the brothels are still, Your Honor, acting completely contrary to those laws. They're not acting in compliance with some kind of regulatory scheme that predictably forces them to do something. And therefore, I think there's the attenuation that I was trying to talk about. So in your view, regulations such as requiring a worker to stay at the brothel or be kept there for purposes, I guess, maybe of a failed STI test or something else, that is not enough to fairly predict that they might be sex trafficked by the brothel. I would agree with that, Your Honor. And is there no obligation? Do you agree then that if the county is not doing enough to enforce the law against sex trafficking laws, is traceability off the table for that always as well or no? I think that the failure to enforce laws scheme of trying to establish standing is going to be the very, very, very rare case when that could ever be enforced. And it's almost the creation of a duty doctrine kind of idea that's out there and that's not present in this case. Although I presume that if Nevada or the agents or the particular county government authorities wanted to provide citizens a remedy, if citizens believed that the state or the counties weren't enforcing their laws, they could provide such a remedy, including some type of mandamus. Yes? I believe they could, Your Honor. I haven't seen it here. It doesn't exist here. I think the state of Nevada could potentially do something along those lines under a waiver of sovereign immunity. Here we have NRS Chapter 41, which is the limited waiver of sovereign immunity. So, yes, Your Honor. Absolutely. Does it change with one of the defendants being Commissioner Lance Gilman? I mean, I took that to be allegations being brought in an individual capacity, not in an official capacity serving as a commissioner. But does any of this analysis change with respect to that defendant? I think two parts to that question, Your Honor. First, I represent Mr. Gilman here in his official capacity, which is, of course, merely a suit against the political entity that he's representing at the time. And so there's that portion of it. And there was some discussion of that in the district court case. So I just wanted to make that clear here. As far as whether it changes the standing analysis, I don't believe it does. Because, again, you'll see in the brief, we've cited all of the rules and regulations that prevent him from doing the criminal activities that they're alleging that he did. And so if he's acting in his individual capacity, and he's, again, then merely one of these third parties, albeit named in the case here, he therefore is acting completely unpredictably, I would suggest, because he's violating the laws. And that doesn't It's, as Judge Dew reasoned, still too far attenuated. We believe her order was correct, and we just request that the panel affirm it. All right. Thank you, counsel. Thank you. Just three quick things on rebuttal, Your Honors. First of all, the plaintiffs allege that Lance Gillman was allowed to regulate himself, essentially, as being a commissioner on the brothel licensing board while he was running his own brothel, and that the licensing process for his brothel was irregular. The plaintiff and the other women with her were taken into the sheriff's office and handed the license within five minutes without any ID checks or other kind of checks. And when she asked the driver from the brothel who'd brought them there about it, she knew it wasn't correct, he told her to stop talking. And so there's a reasonable inference there that some kind of corruption irregularity was in play. The second thing I just wanted to note quickly on the third-party traffickers, which is that the court below decided to infer their existence, even though the plaintiff explicitly said there weren't any, so was not taking the plaintiff's facts as true. And then finally, FDA says that causation is ordinarily easy to establish when the plaintiff is themselves a regulated party, which is the case here. And the plaintiff has argued that the one-sided SDI testing rules that applied only to her and not to the men buying sexual access to her served to encourage them to buy sex in these legal brothels by assuring them that it was safe. But the court below didn't draw this inference instead saying basically the plaintiff was asking for something contradictory because necessarily the SDI regulations must have been a safety measure to benefit her. Jane Doe's injuries from being sex trafficked can be fairly traced to the counties that licensed and colluded with her traffickers, and so she asked this court to reverse. Thank you. All right, we thank counsel for their arguments. The case just argued is submitted.
judges: BENNETT, SANCHEZ, Holcomb